## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| OLIVER LAWTON WOOSLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:22-cv-00166-SEP |
| ) | |
| LIEUTENANT RICK LETCHWORTH, et al., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM AND ORDER

Before the Court are Plaintiff Oliver Lawton Woosley's motion for leave to proceed *in forma pauperis* and motion to appoint counsel. Docs. [2], [3]. The Court finds that Plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $33.00. *See* 28 U.S.C. § 1915(b)(1). For the reasons set forth below, the Court directs Plaintiff to file an amended complaint and denies Plaintiff's motion to appoint counsel at the present time.

### 28 U.S.C. § 1915(b)(1)

If a prisoner lacks sufficient funds in his or her prison account to pay the entire filing fee, the Court may authorize the commencement of a civil action without prepayment of fees. 28 U.S.C. § 1915(a). Upon granting a request to proceed *in forma pauperis*, the Court must assess and, when funds exist, collect an initial partial filing fee of 20% of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. 28 U.S.C. § 1915(b)(1). After paying the initial partial filing fee, the prisoner is required to make monthly payments of 20% of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency with custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of his motion for leave to proceed *in forma pauperis*, Plaintiff attached receipts from the Dent County Sheriff's Office showing his deposits for the last six months. Doc. [2-1]. The receipts show an average monthly deposit of $165.00. The Court will therefore assess an initial partial filing fee of $33.00, which is 20% of Plaintiff's average monthly deposit.

1

## LEGAL STANDARD

After granting the motion to proceed *in forma pauperis*, the Court must evaluate and dismiss the complaint if it is frivolous or malicious, or if it fails to state a claim upon which relief can be granted.  28 U.S.C. § 1915(e)(2)(B).  To state a claim for relief, Plaintiff's allegations must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Determining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  The Court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (court need not "accept as true any legal conclusion couched as a factual allegation").

When evaluating the legal sufficiency of a *pro se* litigant's complaint, the Court must give the complaint the benefit of a liberal construction. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).  A "liberal construction" means that "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Id.*  A "liberal construction" does not excuse the failure to allege sufficient facts to state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004) (federal courts not required to "assume facts that are not alleged[ ] just because an additional factual allegation would have formed a stronger complaint.").  Nor does a liberal construction excuse a *pro se* litigant from following the Court's local rules and the Federal Rules of Civil Procedure. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

## THE COMPLAINT

Plaintiff is a *pro se* litigant who was a prisoner at the Dent County Jail in Salem, Missouri when he filed his Complaint.[1]  Doc. [1] at 2.  When he filed this lawsuit, Plaintiff was incarcerated for state law crimes but was awaiting sentencing on federal charges in Dent County.  Doc. [1] at 2.  Plaintiff filed suit under 42 U.S.C. § 1983 against ten defendants:  (1) Lieutenant Rick Letchworth; (2) Sergeant Michelle Cummings; (3) Dent County; (4) Dent County Sheriff's Department; (5)

---

[1] On April 4, 2022, Plaintiff filed a notice of address change indicating that he was moved to the South Central Correctional Center in Licking, Missouri.  *See* Doc. [6] at 1.  On August 18, 2022, Plaintiff filed a second notice stating that he was now located at the "Secure Deposit – St. Louis City Jail."  Doc. [7] at 1.

Corporal Trosper; (6) Supervisor Codee Sagdalen; (7) Dent County Sheriff; (8) Dent County Jail Administrator; (9) Officer Hayden Lawler; and (10) Officer David Jarvis. Doc. [1] at 2-5. Each individual defendant is sued in both his or her official and individual capacities. *Id.* at 4-5.

In the "Statement of Claim," Plaintiff asserts that on October 8, 2021, he requested a hard copy of the Qur'an, as well as "to be put on a religious diet in accordance with the practice of Islam." *Id.* at 10. He also requested that jail staff correct his religious preference, because the system had him "down as no religious preference," and that he be given a prayer rug. *Id.* Officer Hudson—who is not named as a defendant—advised Plaintiff that Dent County does not provide hard copies of the Qur'an, "as they have it on their tablets;" that he could not have a prayer rug sent to him; and that he "was asked [his] religious preference during booking." *Id.* Because Plaintiff did not request a religious diet when he was booked, Hudson explained that Plaintiff could not change his preference now. *Id.*

In November, Plaintiff "was placed on lockdown," and requested a tablet to read the Qur'an. *Id.* On November 17, 2021, he filed a grievance after not being given access to a tablet for four days in a row during Plaintiff's period in lockdown in "c pod", which he insists severely restricted his religious practice. *Id.* Plaintiff was moved to another pod while still in lockdown, during which time Sergeant Michelle Cummings responded to the grievance saying that Plaintiff was given access to a tablet in his new pod. *Id.* Plaintiff contends that the response ignored the fact that Plaintiff had complained about the four days of lockdown during which he was denied access to the Qur'an. *Id.*

On November 18, 2021, Plaintiff filed another grievance regarding the taking of his eyeglasses during lockdown. *Id.* He asserts that staff took his glasses, "refused to give them back," and that Supervisor Sagdalen told him he "would get them back when [he] got off lockdown." *Id.* Plaintiff states that he needs his glasses to see, that he was without them for 15 days, and that it amounted to cruel and unusual punishment. *Id.*

On November 19, 2021, Plaintiff "filed a grievance because [his] pin number had been locked," which prevented him "from using the phone to contact [his] attorney or family." *Id.* He states that Sergeant Cummings locked the pin, that she "then went home for the weekend," and that no other staff members knew how to unlock it. *Id.*

3

On November 20, 2021,[2] Plaintiff filed a fourth grievance, complaining that his "pin [was] still being locked," that he was "still not getting [his] glasses, and still not being given access to a tablet for the reading of the Quran." *Id.* Officer Jarvis advised him that Jarvis would "forward [the] grievance to [the] proper person," but Plaintiff received no answer, and he claims that the issues were not resolved even though the grievance was marked resolved. *Id.*

On November 24, 2021, Plaintiff filed a grievance against Supervisor Sagdalen, complaining that Sagdalen had not told him he "only had 24 hours to appeal a write up when [he] told her [he] wanted to appeal the write up [he] was given." *Id.* In addition, Plaintiff states that Sagdalen failed to provide him "access to a tablet or pen and paper to file [an] appeal." *Id.* Officer Hunt—who is not named as a defendant—rejected his grievance on the grounds that he was not allowed to have a tablet in lockdown, even though Plaintiff insists that Sergeant Cummings had given him approval "by this time to have one." *Id.*

On November 25, 2021, Officer Hunt "rejected [Plaintiff's] request for a toothbrush saying that while on lockdown [he] can only access religious material, not file facility forms." *Id.* Plaintiff states that "[i]t does not say this anywhere in Dent County policy and procedure." *Id.*

On December 11, 2021, Plaintiff filed a grievance about his prior grievances being marked "as resolved without doing anything to resolve the issues." Doc. [1] at 11. Officer Lawler responded by telling him that he "could appeal answers to grievances," and then marked this grievance as "resolved." *Id.*

On December 25, 2021, Plaintiff asked "to be put on a kosher tray," but Supervisor Sagdalen "once again denied [his] request because she said [he] had to make this request at booking time." *Id.* He states that his request form "was escalated," and that Sergeant Cummings "confirmed" that he "was approved to have [a] tablet for religious practice but could not have it for use at night." *Id.* Plaintiff thereupon made another request for a hard copy of the Qur'an, so he could read it "at night as is the practice of followers of Islam." *Id.* Sergeant Cummings again told him that hard copies were not provided, and that he "would not be allowed to have access at night." *Id.* Cummings also denied his request for a religious diet because Plaintiff had not made the request at booking. *Id.* Plaintiff insists that he was not asked. *Id.* The request "was escalated again," and Lieutenant Letchworth "answered it by saying [Plaintiff] addressed more than one issue and marked it resolved without appeal." *Id.*

---

[2] Plaintiff gives the date "11-20-22," but context makes clear that he meant 2021, not 2022. *See* Doc. [1] at 11.

4

On December 28, 2021, Plaintiff submitted a grievance regarding the "refusal of staff to put [him] on [a] religious diet." *Id.* Sergeant Cummings marked the grievance as resolved because "it was a duplicate grievance," though Plaintiff contends that "nothing was done." *Id.*

On December 31, 2021, Plaintiff filed another grievance about not having access to a tablet "at night for nightly prayers," and pointed out that the "lack of a hard copy of [the] Quran . . . restricts [his] religious practice." *Id.* Supervisor Sagdalen responded that based on the "directive of Sergeant Cummings," he would not have access to a tablet at night. *Id.* Plaintiff asserts that Sagdalen's response did not address the "lack of [a] hard copy of [the] Quran and [the] restriction of religious practice it causes." *Id.* Nevertheless, this grievance was "marked resolved." *Id.*

On January 4, 2022, Plaintiff states that he "was put on lockdown for having a tablet in [his] cell at night to read [the] Qur'an." *Id.*

On January 8, 2022, Plaintiff "filed a grievance about not being given a tablet to read the Quran on lockdown[,] even though this had been approved by Sergeant Cummings." *Id.* He also complained that he was "put on lockdown for having [a] tablet in [his] cell after lockdown to read [the] Quran." Officer Leach—who is not identified as a defendant—marked the grievance as resolved after advising Plaintiff "that it was policy not to allow tablet[s] in cell[s] on lockdown." *Id.*

On January 8, 2022, Plaintiff states that he "fell getting out of [the] shower because" Supervisor Sagdalen "refused to provide a towel for us to step out on even though they are supposed to and [Plaintiff] had requested it." *Id.* He asserts that Sagdalen and Officer Trosper "proceeded to leave" him "on the floor for 2 hours without even coming to check on [his] condition," even though he "repeatedly requested help and had [his] cell mate" request help as well. *Id.* Due to this fall, Plaintiff "was taken to [a] hospital and diagnosed with [a] strained [clavicle] and bruised shoulder." *Id.*

On January 12, 2022, Plaintiff filed a grievance because he "was denied access to [a] tablet on lockdown for [his] religious practice for the previous 5 days." *Id.* He also complained that his "pin was locked again," preventing him "from accessing the Quran even on [his] one hour of recreation." *Id.* Supervisor Sagdalen responded by telling Plaintiff that he "would not be provided with a tablet for [his] religious purposes," and that he would have "to share the single tablet in E-pod with everyone else," despite having "no way to get the tablet while on lockdown 23 hours per day." *Id.* Plaintiff states that he did not receive a response until January 24, 2022, when Officer Jarvis marked it "resolved," even though Officer Jarvis "is not authorized to answer an escalated grievance." *Id.*

5

On January 16, 2022, Plaintiff filed a "grievance about not being provided with a tablet for religious purposes, and also on [the] pin being locked so that [he] could not access [the] Quran even on lockdown." *Id.* at 12.  He "also filed on Officer Meyers"—who is not named as a defendant—because Meyers purportedly told him, "she did not care if [he] had been approved to have a tablet by Sergeant Cummings." *Id.*  Plaintiff states that he "added another message" on January 24, 2022, "again pointing out that [his] free access to the Quran had been denied for 14 consecutive days, and stating that still nothing had been done to resolve [the] issue." *Id.*  Plaintiff states that Sergeant Cummings responded to this grievance days later without resolving the issue or addressing the fourteen-day lack of access to the Qur'an, and marked the grievance as resolved. *Id.*  In addition, Plaintiff filed this grievance against Supervisor Sagdalen because she "locked the pin to begin with." *Id.*  His grievance was escalated, but not answered for four days, even though Plaintiff alleges that "policy and procedure states that they are to be answered within 2 days." *Id.*

On January 18, 2022, Plaintiff requested copies of all the grievances and forms he filed while in the Dent County Jail. *Id.*  Despite Officer Leach's promise to "send this up the chain of command," Plaintiff did not receive his copies. *Id.*

On January 22, 2022, Plaintiff filed a grievance against Officer Trosper and Supervisor Sagdalen for denying him access to the Qur'an by not allowing him to have "a tablet while on lockdown." *Id.*  Plaintiff alleges that the wing where he was held on lockdown only had one tablet and that he lacked access for each of his five daily prayers. *Id.*  He states that the grievance was escalated but not addressed as of January 28, 2022. *Id.*

On January 24, 2022, Plaintiff tested positive for COVID-19 after being on lockdown "with only 2 other inmates for almost a month." *Id.*  As his only interaction was with staff, Plaintiff asserts that he "obviously contracted the virus from" them.  According to Plaintiff, that demonstrates "that staff is not being tested appropriately or taking preventative measures to ensure our well being." *Id.*  By way of example, Plaintiff states that "[m]ost staff do not ever wear masks[.]" *Id.*  He contends that amounts to deliberate indifference. *Id.*

Plaintiff states that he is "also seeking to bring action against Dent County[,] Missouri, the Dent County Sheriffs Office, the Sheriff of Dent County, and the Dent County Jail Administrator for failing to train [their] employees and allowing [them to] conduct a policy enforcement that directly resulted in continued violation of [his] 1st, 8th, and 14th amendment rights and violated [his] freedom to religious exercise as a Muslim." *Id.*

6

For his injuries, Plaintiff states that he suffered a strained clavicle and bruised shoulder from the fall while exiting the shower, and he seeks $1 million dollars a day for each day he was denied unrestricted access to the Qur'an[3] and $1 million for the injuries from both the fall and his contraction of COVID-19. *Id.* at 13-14.

## DISCUSSION

### I. <u>Deficiencies in Complaint</u>

The Complaint is subject to dismissal for several reasons. To begin with, Plaintiff cannot sue the Dent County Sheriff's Department, as it is not a suable entity under 42 U.S.C. § 1983. *See Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (affirming dismissal of West Memphis Police Department and West Memphis Paramedic Services because they were "not juridical entities suable as such"). As for Dent County itself, Plaintiff has not alleged sufficient facts demonstrating that it violated his constitutional rights due to a policy, custom, or failure to train. *See Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Because Plaintiff's official-capacity claims against the individual Defendants are actions against Dent County, they must also be dismissed. *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (in an official-capacity claim against an individual, the claim is actually "against the governmental entity itself").

Plaintiff's individual-capacity claims must be dismissed because he has not pled sufficient facts showing how each defendant was personally liable for violating his constitutional rights. *See S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) ("Government officials are personally liable only for their own misconduct."); *Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (a plaintiff must show a "causal connection between" defendants' actions and "any alleged deprivation" of plaintiff's rights). For example, at the end of the "Statement of Claim," plaintiff broadly asserts that the Dent County Sheriff and Jail Administrator failed to train their employees, without providing any factual allegations. *See* Doc. [1] at 12.

Most of the Complaint is devoted to allegations regarding the Dent County Jail's grievance procedure, and most of the Defendants are accused of failing to resolve his grievances. But a grievance procedure is only a procedural right and does not confer substantive rights. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) ("[A prison] grievance procedure is a procedural right only,

---

[3] Plaintiff seeks $1 million for each day he claims he was deprived of the Quran, for a total of $20 million. Doc. [1] at 14.

it does not confer any substantive right upon the inmates.") (quoting *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982))); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with the district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); *Fallon v. Coulson*, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) ( "Defendants' failure, if any, to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights.").

Finally, Plaintiff has improperly joined together different claims occurring at different times involving different defendants. Many of Plaintiff's claims assert violations of the First Amendment, but he has also alleged that his glasses were wrongly taken, that staff displayed deliberate indifference after he slipped in the shower, that he temporarily lost the ability to make phone calls, including to his lawyer, that staff did not properly follow the grievance procedure, and that staff were deliberately indifferent in allowing him to contract COVID-19. Federal Rule of Civil Procedure 20(a)(2) provides:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). While joinder is encouraged under the Federal Rules of Civil Procedure, permissive joinder is not applicable in all cases. *Mosely v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). "The rule imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence, or series of transactions or occurrences; and (2) some questions of law or fact common to all the parties must arise in the action." *Id.* Thus, a plaintiff cannot join in a single lawsuit multiple claims against different defendants related to events arising out of different transactions or occurrences.

The Court will give Plaintiff an opportunity to file an amended complaint in accordance with the instructions set forth below. **Plaintiff must follow these instructions. Failure to do so may result in the dismissal of his claims**.

## II.    Amendment Instructions

Plaintiff should type or neatly print his amended complaint on the Court's civil rights form, which will be provided to him. *See* E.D. Mo. L.R. 2.06(A) ("All actions brought by self-represented

8

plaintiffs or petitioners should be filed on Court-provided forms where applicable."). If the amended complaint is handwritten, the writing must be legible. In the "Caption" section of the Court-provided form, Plaintiff should clearly name every party he intends to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties[.]"). If there is not enough room in the caption, plaintiff may add additional sheets of paper, as he did in the original Complaint. All defendants must be clearly listed.

Plaintiff should put his case number in the appropriate location on the upper right-hand section of the first page. He should then fill out the complaint form in its entirety and make sure that it is signed. In the "Statement of Claim" section, Plaintiff should provide a short and plain statement of the factual allegations supporting his claim. *See* Fed. R. Civ. P. 8(a). Plaintiff "must state [his] claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b).

Plaintiff may not join unrelated claims in his amended complaint. The amended complaint should include only claims that arise out of the same transaction or occurrence—that is, claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2).

As noted above, Plaintiff's Complaint names ten different defendants and sets forth at least half a dozen unrelated claims encompassing—among other things—First Amendment violations and deliberate indifference to his medical needs. It appears that Plaintiff is attempting to bring every conceivable claim stemming from his time at the Dent County Jail. That is not permitted. Plaintiff may not bring every claim he has in a single lawsuit, without showing that the right to relief asserted against all the defendants arises out of the same transaction or occurrence. **If Plaintiff insists on attempting to join unrelated claims in his amended complaint, the unrelated claims will be dismissed**. If Plaintiff has multiple claims against a **single** defendant, he may name that person and set forth as many claims as he has against that defendant. *See* Fed. R. Civ. P. 18(a).

Plaintiff's Complaint also made it difficult to discern what each defendant was accused of doing. In structuring his amended complaint, Plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, Plaintiff should write a short and plain statement of the factual allegations supporting his claim against that specific defendant. If Plaintiff is suing more than one defendant, he should follow the same procedure for each defendant.

Plaintiff must specify whether he intends to sue each defendant in an official capacity, an individual capacity, or both. The failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

If Plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating that defendant's personal responsibility for harming him.  *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights") (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)). The "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).  For example, if Plaintiff alleges that a defendant violated his right to exercise his religion, he must present facts demonstrating what that defendant personally did or did not do to interfere with his religious practices.

If Plaintiff sues multiple defendants, it is important that he establish the responsibility of each separate defendant for harming him.  It is not enough for Plaintiff to make general allegations against the defendants as a group, or to make allegations against one person and simply impute responsibility for those actions to the others.  Rather, Plaintiff needs to provide the role of each named defendant in this case, in order that each specific defendant can receive notice of what he or she is accused of doing.  *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim[.]") (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999))); *see also Boggs v. Am. Optical Co.*, 2015 WL 300509, at *2 (E.D. Mo. Jan. 22, 2015) (a complaint that asserts all conceivable claims against a group of defendants "without facts specific enough that those defendants can respond to the allegation" is an inappropriate "shotgun pleading").

Plaintiff is cautioned that the filing of an amended complaint **completely replaces** the original complaint.  Claims that are not re-alleged in the amended complaint will be deemed abandoned.  *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect.").

Upon receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915.  Plaintiff's failure to make specific factual allegations against a defendant will result in the dismissal of that defendant.  If Plaintiff fails to file an amended complaint on a Court-provided form within thirty (30) days of the entry of this Order and in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to Plaintiff.

**III.     Motion to Appoint Counsel**

Plaintiff has filed a motion to appoint counsel. Doc. [3]. In civil cases, a *pro se* litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where 'the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel.'" *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (quoting *Johnson v. Williams*, 788 F.2d 1319, 1322 (8th Cir. 1986)). When deciding whether to appoint counsel, courts consider "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing the factors, the Court finds that the appointment of counsel is not warranted at this time. Thus far, Plaintiff has not demonstrated that he is unable to investigate facts or present his claims. Plaintiff's claim is deficient as described above, and he will be ordered to file an amended complaint. The Court will entertain future motions for appointment of counsel as the case progresses, if appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis*, Doc. [2], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff must pay an initial partial filing fee of $33.00 within **thirty (30) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel, Doc. [3], is **DENIED** at this time.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send to Plaintiff a copy of the Court's prisoner civil rights complaint form.

**IT IS FURTHER ORDERED** that Plaintiff shall file an amended complaint on the Court-provided form within **thirty (30) days** of the date of this Order, in accordance with the instructions set forth above.

**IT IS FURTHER ORDERED** that upon the filing of Plaintiff's amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915.

Dated this 7th day of September 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE